Nicholsokt, C. J.,
delivered the opinion of the Court.
On the 5th of January, 1863, James C. Cruise *261 was appointed administrator of Henry Bradshaw, and gave bond as such, with Thomas H. Phillips and Thomas "Walton as sureties.
Soon after his appointment, the administrator sold the personal estate, taking notes with security, due at twelve months, payable in Tennessee money for all sums over five dollars, and cash for all sums under five dollars.
This suit was brought against Cruise and ' his sureties for breaches of his administration bond, and the breaches alleged are, that he sold the property on a credit of twelve months, and agreed to take Tennessee Bank currency in payment, when the debts should become due, and that he did so receive Tennessee Bank currency; and, secondly, that he sold one of the horses for one hundred and three dollars, to S. S. Johnson, with W. B. Johnson as security, and that the amount was lost, because of the insolvency of the parties to the noté. The cause was submitted to the Circuit Judge, upon the proof, without the intervention of a jury. The Circuit Judge held, that - the administrator was guilty of no devastavit, and gave judgment for the defendant, from which plaintiff appealed in error.
The first question is, whether the administrator was guilty of a devastavit in selling the property of the estate, in January, 1863, payable at the end of twelve months in Tennessee money. The witnesses concur in proving that, by the terms of the-sale, the notes were to be payable in Tennessee money; and, that at the time of the sale, the *262 common currency in circulation was Tennessee Bank notes. It is also shown, that there were different opinions as to what was the best currency in which to make investments.
One witness, Bradshaw, who was a son-in-law of the administrator, and a son of the intestate, and hence a distributee, proves that he advised the administrator to sell the property on twelve months’ credit, the notes to be discharged in Tennessee money.
He proves that there was a diversity of opinion as to the best currency in which to invest. Witness thought Tennessee money was the best, and so advised the administrator.
The power, duties, and responsibilities of trustees necessarily vary with the directions, limitations and restrictions contained in the instrument under which they .undertake to act; their general duty is to do whatever may be necessary and proper to give effect to the purposes contemplated by the trust; the intention of the instrument is to guide their action, and protect them in the performance of their duty: Carter v. Roland, 11 Hum., 338.
In the ease before us, the administrator was bound by his bond to administer the effects of the intestate according to law, and with an eye to the interests of the distributees and -creditors. In determining his responsibility, we must look to the specific acts in which he may be charged with dereliction, and to the circumstances which sur *263 rounded him, when the acts complained were performed. It was his duty to sell the property, and so to sell as to secure the best price for the benefit of the creditors and distributees. In this matter he must necessarily exercise a discretion, but in doing so, he must risk the consequences of an unwise or rash exercise of that discretion.
He must at least act with the same prudence and caution with which an ordinary prudent man would act in his own business. ■ As the law gave no specific directions as to the terms on which the property should be sold, or the kind of funds which might be received, he was necessarily intrusted with a sound discretion as to these matters, and if he has exercised this discretion with fidelity and diligence, he cannot be held liable.
There are cases in which executors, guardians, and other parties have possession of funds under specific directions as to their use or application. In such cases of directory trusts, the trustee is held to a strict accountability, whenever he uses or applies the fund in violation of his specific duties.
In such cases, the trustee has no discretion, and is held to a strict accountability: 11, Hum., 340. But the rule laid down by Story, 2 Sto. Eq. Jur., § 1296: “That the trustee should he bound only to good faith and reasonable diligence” is the rule applicable to a case like the one before us, in which the trustee necessarily has a sound discretion in the execution of his trust.
*264 The proof shows that when tbe sale took place (in January, 1863) Tennessee money was tbe common currency of the country.
The war was tben flagrant, and it was impossible to foresee how it would result. Tbe opinions of intelligent and careful men were widely different as to tbe issu.e of tbe' pending conflict. If it should result one way, the Confederate currency would be worthless; if another way, tbe Federal currency would be valueless. G-old and silver bad ceased to be a circulating currency.
But it was not an unreasonable supposition, that no matter which way tbe contest ended, tbe State of Tennessee would be able to meet her pecuniary obligations. There is no reason to doubt, that the administrator came to this conclusion, honestly, and after taking tbe advice of those in whom he confided. In this connection, it is a material circumstance, that one of tbe distributees advised tbe administrator to tbe course be pursued.
In 2 Sp. Eq. Jur., 936, .it is said, that tbe court .will endeavor to deliver tbe trustee from any loss dr injury that may arise from a misapplication of tbe trust money, where it is done with tbe sanction of any one of ■ tbe beneficaries, who is sui juris.
We are, therefore, of opinion, that there was no error in tbe judgment of tbe Circuit Judge on this branch of tbe case.
In tbe next place, it is insisted that tbe .administrator was guilty of a devastavit, in selling one *265 of the horses for one hundred and three dollars, and taking a note with insufficient security.
The proof on this subject is not as full and clear as it might have been.
No witness proves directly, that the two makers of the note were insolvent when the note was given. Most of the evidence on this subject is of a negative character. One witness, however, proves expressly and positively, that both of the makers of the note were good and solvent, and he specifies the property which they owned. We are of opinion that the evidence altogether sustains the judgment of the Circuit Judge in this branch of the case.
¥e find no error in the record, and affirm the judgment below.